**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| VITA NUOVA, INC.,<br><br>    *Plaintiff*,<br><br>  v.<br><br>ALEX M. AZAR II, in his official capacity as the Secretary of Health and Human Services; UNITED STATES OF AMERICA,<br><br>    *Defendants*. | Case No. 4:19-cv-00532-O |

**DEFENDANTS' MOTION TO DISMISS
AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 3

    A.    Statutory and Regulatory Background ..................................................... 3

    B.    Litigation Concerning the 2019 Rule ...................................................... 5

    C.    This Action ............................................................................................... 6

LEGAL STANDARD ............................................................................................................ 7

ARGUMENT ......................................................................................................................... 8

    I.    Claims 1 through 4 Must be Dismissed Because the Challenged Features of the 2000 Regulations Have Been Superseded. ............................................ 9

    II.    Claims 1 Through 4 Must Be Dismissed for Additional Reasons as Well ................ 13

    III.    Claim 5 Must Be Dismissed Because Vita Nuova Has Not Adequately Pled That the Challenged Regulation Requires Anything of Vita Nuova .......................... 16

    IV.    Claim 6 Must Be Dismissed Because Plaintiff's Asserted Injury is Wholly Speculative ............................................................................................................ 17

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997)........................................................................................... 9, 10, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................... 8

*Barrera–Montenegro v. United States*,
    74 F.3d 657 (5th Cir. 1996) ...................................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................... 8

*Bergh v. Washington*,
    535 F.2d 505 (9th Cir. 1976) .................................................................................. 12

*California v. Azar*,
    927 F.3d 1068 (9th Cir. June 20, 2019) .................................................................. 5

*Carver v. Knox Cty.*,
    887 F.2d 1287 (6th Cir. 1989) ................................................................................ 12

*Checker Cab Operators, Inc. v. Miami-Dade Cty.*,
    899 F.3d 908 (11th Cir. 2018) .................................................................................. 9

*Commodity Futures Trading Com'n v. Chilcott Portfolio Mgmt., Inc.*,
    713 F.2d 1477 (10th Cir. 1983) .............................................................................. 12

*D.C. Court of Appeals v. Feldman*,
    460 U.S. 462 (1983)................................................................................................. 11

*DEK Energy Co. v. FERC*,
    248 F.3d 1192 (D.C. Cir. 2001) .............................................................................. 15

*Doe v. Tangipahoa Parish Sch. Bd.*,
    494 F.3d 494 (5th Cir. 2007) .................................................................................... 8

*E.E.O.C. v. University of Pennsylvania*,
    850 F.2d 969 (3d Cir. 1988).................................................................................... 12

*El Paso Nat. Gas Co. v. FERC*,
    50 F.3d 23 (D.C. Cir. 1995) .................................................................................... 15

*Empower Texans, Inc. v. Nodolf*,
   306 F. Supp. 3d 961 (W.D. Tex. 2018) ................................................................. 17

*Family Planning Ass'n of Maine v. HHS*,
   No. 19-cv-100, 2019 WL 2866832 (D. Me. July 3, 2019) ....................................... 6

*Feller v. Brock*,
   802 F.2d 722 (4th Cir. 1986) ................................................................................ 12

*Great N. Ry. Co. v. Nat'l R.R. Adjustment Bd.*,
   422 F.2d 1187 (7th Cir. 1970) .............................................................................. 12

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
   445 U.S. 375 (1980) .............................................................................................. 11

*Henderson v. Stalder*,
   287 F.3d 374 (5th Cir. 2002) .................................................................................. 8

*Hitt v. City of Pasadena*,
   561 F.2d 606 (5th Cir. 1977) .................................................................................. 8

*Home Builders Ass'n of Miss. v. City of Madison*,
   143 F.3d 1006 (5th Cir. 1998) ................................................................................ 7

*Int'l Women's Day Mar. Planning Comm. v. City of San Antonio*,
   619 F.3d 346 (5th Cir. 2010) .................................................................................. 9

*MAI Basic Four, Inc. v. Basis, Inc.*,
   962 F.2d 978 (10th Cir. 1992) .............................................................................. 12

*Marino v. Ortiz*,
   484 U.S. 301 (1988) .............................................................................................. 11

*McCorvey v. Hill*,
   385 F.3d 846 (5th Cir. 2004) .................................................................................. 9

*Miss. State Democratic Party v. Barbour*,
   529 F.3d 538 (5th Cir. 2008) .................................................................................. 8

*Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*,
   259 F.3d 949 (8th Cir. 2001) ................................................................................ 12

*New England Reg'l Council of Carpenters v. Kinton*,
   284 F.3d 9 (1st Cir. 2002) ..................................................................................... 10

*Plaut v. Spendthrift Farm, Inc.*,
    514 U.S. 211 (1995) .......................................................................................... 11

*Ragsdale v. Turnock*,
    841 F.2d 1358 (7th Cir. 1988) ....................................................................... 14

*Raines v. Byrd*,
    521 U.S. 811 (1997) ........................................................................................... 8

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ............................................................................ 7

*Renne v. Geary*,
    501 U.S. 312 (1991) ........................................................................................... 7

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923) ......................................................................................... 11

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ...................................................................................... 3, 4

*S. Mills, Inc. v. Nunes*,
    586 F. App'x 702 (11th Cir. 2014) ............................................................... 12

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976) ............................................................................................. 8

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................................................... 17

*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
    91 F.3d 1 (1st Cir. 1996) ................................................................................ 12

*United Transp. Union v. ICC*,
    891 F.2d 908 (D.C. Cir. 1989) ...................................................................... 15

*UtahAmerican Energy, Inc. v. Dep't of Labor*,
    685 F.3d 1118 (D.C. Cir. 2012) .................................................................... 12

*W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) ......................................................................... 12

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) ...................................................................... 18

*Zambrana v. Califano*,
  651 F.2d 842 (2d Cir. 1981) ................................................................ 12

## STATUTES

42 U.S.C. § 300 ........................................................................................ 3

42 U.S.C. § 300a-4 ................................................................................... 3

42 U.S.C. § 300a-6 ................................................................................ 1, 3

42 U.S.C. § 300a-7 ........................................................................... *passim*

Pub. L. No. 91-572, 84 Stat. 1504 (1970) ............................................... 3

## REGULATIONS

42 C.F.R. § 59.5 ...................................................................................... 5

42 C.F.R. § 59.8 ...................................................................................... 4

42 C.F.R. § 59.9 ...................................................................................... 4

42 C.F.R. § 59.10 .................................................................................... 4

42 C.F.R. § 59.14 .................................................................................... 5

42 C.F.R. § 59.15 .................................................................................... 5

42 C.F.R. § 59.16 ................................................................................. 5, 12

45 C.F.R. § 75.300 ......................................................................... 2, 6, 9, 16

36 Fed. Reg. 18,465 (Sept. 15, 1971) ................................................... 3, 4

53 Fed. Reg. 2922 (Feb. 2, 1988) ............................................................ 4

58 Fed. Reg. 7455 (Jan. 22, 1993) ........................................................... 4

58 Fed. Reg. 7462 (Feb. 5, 1993) ............................................................ 4

65 Fed. Reg. 41,270 (July 3, 2000) .......................................................... 4

65 Fed. Reg. 41,281 (July 3, 2000) ...................................................... 1, 4

73 Fed. Reg. 78,072 (Dec. 19, 2008) ..................................................... 14

83 Fed. Reg. 25,502 (June 1, 2018) ............................................................... 4

84 Fed. Reg. 7714 (Mar. 4, 2019) ....................................................... *passim*

84 Fed. Reg. 23,170 (May 21, 2019) ........................................................ 14

**RULES**

Fed. R. Civ. P. 12 ................................................................................7, 8, 17

**OTHER AUTHORITIES**

13C Fed. Prac. & Proc. Juris. § 3533.6 (3d ed.) ......................................... 10

H.R. Rep. No. 91-1667 (1970) .................................................................... 3

https://hhs.gov/opa/sites/default/files/FY18-Title-X-Services-FOA-Final-Signed.pdf ................ 15

https://www.bizapedia.com/tx/vita-nuova.html ............................................ 6

https://www.hhs.gov/about/news/2019/09/30/hhs-issues-supplemental-grant-awards-to-title-x-recipients.html .................................................................................. 16

## INTRODUCTION

Title X of the Public Health Service Act ("PHSA") authorizes the Department of Health and Human Services ("HHS") to make grants for family-planning services and issue regulations to implement the statute. In section 1008 of the PHSA, Congress directed that "[n]one of the funds appropriated under [the Title X program] shall be used in programs where abortion is a method of family planning." 42 U.S.C. § 300a-6. In this lawsuit, Plaintiff Vita Nuova Inc. ("Vita Nuova" or "Plaintiff") primarily challenges several regulatory features governing the Title X program that HHS superseded more than seven months ago. *See* 65 Fed. Reg. 41,281 (July 3, 2000) ("2000 Rule or regulations"). HHS replaced the challenged features with new regulations to which Plaintiff does not object, and those new regulations are now in effect nationwide.[1] *See* 84 Fed. Reg. 7714 (Mar. 4, 2019) ("2019 Rule"). Vita Nuova was apparently incorporated just one day before the Complaint in this case was filed, and the Complaint does not allege that Vita Nuova has ever even applied for Title X funds or sought to participate as a subrecipient under a Title X grantee. Indeed, the Complaint provides no indication of what Title X services Vita Nuova purportedly wishes to provide or where it supposedly wishes to provide them.

Nonetheless, Vita Nuova challenges the now-defunct 2000 regulations insofar as they purportedly required Vita Nuova and other religiously objecting providers to provide abortion counseling and abortion referrals upon request (Claim 1); permitted other Title X providers to provide counseling encouraging abortion and abortion referrals (Claim 2); permitted other Title X providers to engage in certain activities such as paying dues to certain groups that advocate abortion as a method of family planning (Claim 3); and failed to require Title X providers to

---

[1] Though the entire 2019 Rule is now in effect, compliance with the physical-separation requirement discussed below is not required until March 4, 2020.

physically separate permitted Title X services from abortion-related activities that are not permitted within the Title X program under section 1008 (Claim 4).

The first and most basic problem with this action is that HHS has addressed all four of these issues in the 2019 Rule, by repealing the relevant regulatory requirement, or adopting provisions to which Plaintiff does not object. HHS in 2019 issued a final rule that does not permit (let alone require) referrals for abortion as a method of family planning within the Title X program, does not permit directive counseling that encourages abortion, and requires Title X providers to maintain physical separation from impermissible abortion-related activities. *See generally* 84 Fed. Reg. 7714. Because Vita Nuova is not injured (and cannot be injured) by—and thus lacks standing to challenge—regulatory features that have been superseded, Claims 1 through 4 must be dismissed.

These claims must be dismissed for other reasons as well. As to Claim 1, even prior to the 2019 Rule, HHS's longstanding policy was not to enforce the provisions of the 2000 Rule against religiously objecting entities where those provisions conflict with the federal conscience protection laws Vita Nuova cites. And as to Claims 2 through 4, even putting aside that the relevant features of the 2000 Rule have been superseded, Vita Nuova does not have standing to complain about what the 2000 Rule once *allowed other entities* to do within the Title X program.

Plaintiff's remaining claims likewise fail for lack of Article III injury. Claim 5 of the Complaint challenges 45 C.F.R. § 75.300(d), which provides that HHS grant recipients "must treat as valid the marriages of same-sex couples." But this provision applies only to recipients of Title X awards and Vita Nuova does not adequately allege that it has applied for (or would be qualified to receive) any such award. In any event, the Complaint does not adequately allege that there is any credible threat that the regulation will be enforced against Vita Nuova. Likewise, while

Plaintiff purports in Claim 6 to mount a Religious Freedom Restoration Act ("RFRA") challenge

to a hypothetical application of a provision of the Church Amendments, 42 U.S.C. § 300a-7(c), its

asserted injury is purely speculative.

Accordingly, the Court should dismiss the Complaint in its entirety.

## BACKGROUND

### A.      Statutory and Regulatory Background

In 1970, Congress enacted Title X of the PHSA to create a limited grant program for

preconception family planning services. *See* Pub. L. No. 91-572, 84 Stat. 1504.  The statute

authorizes HHS to make grants and enter into contracts with public or private nonprofit entities

"to assist in the establishment and operation of voluntary family planning projects which shall

offer a broad range of acceptable and effective family planning methods and services (including

natural family planning methods, infertility services, and services for adolescents)."   42 U.S.C.

§ 300(a).  It also provides that "[g]rants and contracts made under this subchapter shall be made

in accordance with such regulations as the Secretary may promulgate."  *Id*. § 300a-4(a).

Section 1008 directs that "[n]one of the funds appropriated under this subchapter shall be

used in programs where abortion is a method of family planning."  42 U.S.C. § 300a-6.  "That

restriction was intended to ensure that Title X funds would 'be used only to support preventive

family planning services, population research, infertility services, and other related medical,

informational, and educational activities.'"  *Rust v. Sullivan*, 500 U.S. 173, 178-79 (1991) (quoting

H.R. Rep. No. 91-1667, at 8 (1970)).

The Secretary's initial regulations did not provide additional guidance on the scope of

section 1008.  Instead, they simply required that a grantee's application state that the Title X

"project will not provide abortions as a method of family planning."  36 Fed. Reg. 18,465, 18,466

3

(Sept. 15, 1971).   During this period, HHS construed section 1008 and its regulations "as prohibiting Title X projects from in any way promoting or encouraging abortion as a method of family planning" and "as requiring that the Title X program be 'separate and distinct' from any abortion activities of a grantee."  53 Fed. Reg. 2922, 2923 (Feb. 2, 1988) (describing previous HHS guidelines and internal memoranda).

In 1988, the Secretary issued a final rule that prohibited Title X projects from promoting, encouraging, advocating, or providing counseling on, or referrals for, abortion as a method of family planning.  53 Fed. Reg. at 2945 (42 C.F.R. §§ 59.8, 59.10).  The regulations also required that grantees keep their Title X-funded projects "physically and financially separate" from all prohibited abortion-related activities.  *Id.* (§ 59.9).  The Supreme Court upheld these regulations in *Rust*, concluding that they were authorized by Title X, were not arbitrary and capricious, and were consistent with the Constitution.  500 U.S. at 183-203.

In 1993, HHS suspended the 1988 regulations; accordingly the prior guidance went back into effect.  58 Fed. Reg. 7455 (Jan. 22, 1993); 58 Fed. Reg. 7462 (Feb. 5, 1993) (interim rule).  In 2000, HHS finalized a new rule, which required Title X projects to offer and provide upon request, "information and counseling regarding" specific options, including "[p]regnancy termination," followed by "referral upon request."  65 Fed. Reg. 41,270, 41,279 (July 3, 2000).  This rule also eliminated the physical-separation requirement in the 1988 regulations.  *See id.* at 41,275-76.

On June 1, 2018, the Secretary issued a notice of proposed rulemaking designed to "refocus the Title X program on its statutory mission—the provision of voluntary, preventive family planning services specifically designed to enable individuals to determine the number and spacing of their children."  83 Fed. Reg. 25,502, 25,505.  After receiving and reviewing more than 500,000 comments, the Secretary issued the 2019 Rule in March 2019, 84 Fed. Reg. 7714.

The 2019 Rule prohibits Title X projects from providing referrals for, or engaging in activities that otherwise encourage or promote, abortion as a method of family planning. 84 Fed. Reg. at 7788-90 (42 C.F.R. §§ 59.5(a)(5), 59.14(a), 59.16(a)). The 2019 Rule permits, but does not require, "[n]ondirective pregnancy counseling," (42 C.F.R. § 59.14(b)(1)(i)), which may include the neutral presentation of information about abortion, provided it does "not encourage, promote or advocate abortion as a method of family planning." 84 Fed. Reg. at 7789 (42 C.F.R. § 59.16(a)(1)); *see id.* at 7745-46 (preamble). The 2019 Rule further requires that Title X projects remain physically separate from any abortion-related activities conducted outside the program. 84 Fed. Reg. at 7789 (42 C.F.R. § 59.15).

## B.      Litigation Concerning the 2019 Rule

On March 4, 2019, HHS published the 2019 Rule. Federal district courts in Oregon[2] and Washington[3] preliminarily enjoined the 2019 Rule nationwide, while another federal district court in California preliminarily enjoined it in California.[4] On June 20, 2019, the Ninth Circuit stayed all three injunctions pending appeal. *See California v. Azar*, 927 F.3d 1068 (9th Cir. June 20, 2019). The Ninth Circuit subsequently ordered those stay motions to be reheard en banc and instructed that the motions panel's opinion not be given precedential effect; but on July 11, 2019, the en banc court clarified that it had not vacated the stay itself and, by a 7-4 vote, clarified that it had left the stay in place pending the en banc court's disposition of the merits of the stay motion. *See* Order, *California v. Azar*, No. 19-15974 (9th Cir. July 11, 2019), ECF No. 86. Although a federal district court in Maryland preliminarily enjoined the Rule's application in Maryland, the

---

[2] *See Oregon et al. v. Azar et al.*, No. 6:19-cv-00317-MC, ECF No. 142 (D. Or.).

[3] *See Washington v. Azar*, No. 1:19-cv-03040-SAB, ECF No. 54 (E.D. Wash.).

[4] *See California v. Azar*, No. 3:19-cv-01184, ECF No. 103 (N.D. Cal.). The California court subsequently narrowed the scope of its injunction. *See* No. 3:19-cv-01184, ECF No. 115.

Fourth Circuit likewise stayed that injunction. *See Mayor & City Council of Baltimore v. Azar*, No. 19-1614 (4th Cir. July 2, 2019), ECF No. 23.[5]  A fifth district court denied a similar request for a nationwide preliminary injunction against enforcement of the 2019 Rule. *See Family Planning Ass'n of Maine v. HHS*, No. 19-cv-100, 2019 WL 2866832 (D. Me. July 3, 2019).  The plaintiffs in that case have appealed the preliminary-injunction denial to the First Circuit.  The 2019 Rule, which Plaintiff does not challenge and in fact approves of, is thus in effect nationwide.

### C.      This Action

Vita Nuova filed this action on July 3, 2019.  *See* ECF No. 1 ("Compl.").  The Complaint alleges that Vita Nuova "is a Christian, pro-life organization that wishes to participate in the federal government's Title X program."  *Id.* at 1.  Vita Nuova further states that it is not willing to provide abortion counseling or referrals and will not participate in the Title X program if it is required to do so.  *Id.* at 2.  The Complaint does not allege that Vita Nuova has ever applied for Title X funding or sought to participate as a subrecipient in the Title X program, and does not specify what (if any) medical services it provides, or where it provides them.  And it appears that Vita Nuova was incorporated on July 2, 2019, the day before this lawsuit was filed.[6]

As noted above, in Claims 1 through 4, Vita Nuova purports to challenge four features of the 2000 Rule that have been superseded (namely, provisions purportedly requiring abortion counseling and abortion referrals upon request, permitting counseling encouraging abortion and referrals as well as other activities, and failing to require Title X providers to physically separate permitted Title X services from abortion-related activities).  Vita Nuova's remaining two claims are:   (1) a challenge to 45 C.F.R. § 75.300(d), which Vita Nuova asserts would require it to

---

[5] Both the Fourth Circuit and the Ninth Circuit have heard oral argument in the appeals in their respective Circuits.

[6] *See* https://www.bizapedia.com/tx/vita-nuova.html (last visited Oct. 4, 2019).

recognize same-sex marriages if it participated in an HHS grant program; and (2) a RFRA challenge to a provision of the Church Amendments, 42 U.S.C. § 300a-7(c)(1), which Vita Nuova asserts requires it to allow its employees to perform or assist in elective abortions.  *Id.* ¶¶ 50-62. As to this latter claim, Vita Nuova seeks to represent a putative class consisting of "every current and future entity in the United States that: (i) Opposes abortion for sincere religious reasons; and (2) [i]s receiving or intends to apply for a grant, contract, loan, or loan guarantee under the" PHSA and several other statutes HHS administers.  *Id.* ¶ 65.

## LEGAL STANDARD

Defendants move for dismissal of this action under Rule 12(b)(1).  A court dismisses a case under Rule 12(b)(1) for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers," *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation marks omitted), and so the burden of proof on a Rule 12(b)(1) motion to dismiss rests with the party asserting jurisdiction.  In ruling on a 12(b)(1) motion, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (quotation marks omitted). The Court should "consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

As to Claim 5, Defendants alternatively move for dismissal under Rule 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotation marks, citation and alteration omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Where claims could be dismissed for both lack of jurisdiction and failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)."  *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## ARGUMENT

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (*quoting Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)).  "Of the doctrines that have evolved under Article III, . . .  the requirement that the litigant have standing is perhaps the most important."  *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002).  "Standing to sue must be proven, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within our proper judicial sphere." *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496-97 (5th Cir. 2007) (en banc).  To establish standing, "a plaintiff must show: (1) [he] has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury."  *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (citation omitted).

Plaintiff's Complaint alleges no concrete and imminent injury, let alone one that is fairly traceable to Defendants and that a favorable judgment would redress.   The majority of Vita Nuova's claims purport to challenge regulatory features that have been superseded and that, even prior to that change, Vita Nuova would not have had standing to challenge.   Vita Nuova's challenges to 45 C.F.R. § 75.300(d) and 42 U.S.C. § 300a-7(c) likewise fail for lack of injury.

## I.      Claims 1 through 4 Must be Dismissed Because the Challenged Features of the 2000 Regulations Have Been Superseded.

Because the Ninth Circuit clarified after this lawsuit was filed that its earlier en banc order had not vacated the three-judge panel's stay, *see* p. 5, *supra*, there was no injunction of the 2019 Rule in effect at the time Plaintiff filed its suit.   Thus, at that time, Plaintiff plainly suffered no injury from the features of the 2000 regulations it objects to, as they had been superseded by the 2019 Rule.   Plaintiff thus lacks standing to bring Claims 1 through 4.

Settled mootness doctrine confirms the point.   "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quotation marks and citation omitted).   And "[t]ypically, when a party challenges a law as unconstitutional and seeks declaratory and prospective injunctive relief, a superseding statute or regulation moots the case" because "[w]hen a challenged law is preempted, it cannot inflict further injury redressable by declaration or injunction." *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 915 (11th Cir. 2018) (cleaned up); *accord Int'l Women's Day Mar. Planning Comm. v. City of San Antonio*, 619 F.3d 346, 357 (5th Cir. 2010) ("[W]e conclude that any as-applied challenge to the enforcement of the repealed 1988 ordinance is moot."); *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is

repealed."); *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002) (observing that "it would be pointless . . . to enjoin the enforcement of a [policy] that is no longer in effect"); 13C Fed. Prac. & Proc. Juris. § 3533.6 (3d ed.) ("Mootness principles have direct and often obvious application in dealing with attacks on legislative rules that have expired or been repealed. Mootness has overtaken attacks on expired statutes, ordinances, court rules, and administrative acts." (footnotes omitted)).[7]   Similarly here, Claims 1 through 4 must be dismissed because they purport to challenge four aspects of the 2000 Rule that have been superseded.  *See* Compl. ¶¶ 31-49.  The Complaint does not dispute that all four of these features were supplanted by the 2019 Rule.  Likewise, Plaintiff does not suggest that any of the legal infirmities it ascribes to the 2000 Rule in these four claims apply to the 2019 Rule.  Indeed, the Complaint favorably discusses the 2019 Rule at length, *see* Compl. ¶¶ 17-23, and asserts that HHS intended the 2019 Rule "to correct" the features of the 2000 Rule to which Vita Nuova objects, *id.* at 2.  The Complaint further makes clear that Vita Nuova would not even have brought its challenge to these superseded aspects of the 2000 Rule if not for the litigation challenging the 2019 Rule (which resulted in preliminary injunctions against the new rule that were subsequently stayed).  *See, e.g.*, *id.* ¶¶ 30, 38, 43, 47.

At bottom then, Claims 1 through 4 amount to a claim that Vita Nuova needs judicial relief from the 2000 Rule because several district courts enjoined the 2019 Rule earlier this year.  *See, e.g.*, *id.* ¶ 30 ("Because of the nationwide injunctions issued in *Washington v. Azar* and *Oregon v.*

---

[7]   Most of the cases addressing challenges to repealed regulations and statutes have grounded their analysis in terms of mootness rather than Article III standing, presumably because the typical pattern in such cases involves a law or regulation that is repealed during the lawsuit. Because the regulations pertinent to Claims 1 through 4 were superseded *before* this lawsuit, the appropriate doctrine in this case is therefore standing rather than mootness.  In any event, "[m]ootness" is "the doctrine of standing set in a time frame." *Arizonans for Official English*, 520 U.S. at 68 n.22 (quotation marks omitted).  Thus, if this Court were to conclude that the mootness framework governs, the result (dismissal for lack of subject matter jurisdiction) would be the same.

*Azar*, the Secretary cannot implement any aspect of the final rule in any situation, and the unlawful policies in the 2000 rules remain in effect."). But those preliminary injunctions were all stayed at the time Plaintiff filed its complaint, and the 2019 Rule was, and remains, in effect as HHS intended. *See* p. 5, *supra*. Plaintiff thus has not alleged a concrete and imminent injury stemming from the defunct provisions of the 2000 Rule that it challenges.

More fundamentally—and even putting aside the Ninth Circuit stay—exercising jurisdiction over Claims 2 through 4[8] based on the pending litigation surrounding the 2019 Rule would also be inappropriate because conflicting declaratory and injunctive relief along the lines apparently sought by Vita Nuova would be improper. The Supreme Court has articulated an "established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980). It is in this context that the Supreme Court has found that the remedy for an injunction deemed improper is direct appeal, rather than collateral attack. *Cf. Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) (decisions of federal courts are "subject to review only by superior courts in the Article III hierarchy"); *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well-settled."); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Thus, every circuit court of appeals has suggested in some form that district courts should avoid interfering with the remedial authority of other

---

[8] This argument does not apply to Claim 1 because, as explained below, HHS did not require religiously objecting entities like Vita Nuova to provide abortion referrals or abortion counseling prior to the 2019 Rule, and thus has not read the district-court injunctions as mandating imposition of these requirements in the circumstances presented here. *See* p. 14, *infra*.

district courts.  *See, e.g., W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29

(5th Cir. 1985) (holding that federal district courts have an obligation to "avoid rulings which may

trench upon the authority of sister courts").[9]

These principles apply squarely here.  Claims 2 through 4 seek injunctive and declaratory

relief that would bar the Secretary from funding Title X programs that provide abortion referrals

or abortion counseling (apart from the nondirective pregnancy counseling permitted by the 2019

Rule), Compl. ¶ 41; prohibit the Secretary from funding Title X programs that engage in any of

the activities proscribed by 42 C.F.R. § 59.16(a)(2) (a provision of the 2019 Rule), *id.* ¶ 45; and

enjoin the Secretary from funding Title X programs that do not maintain the physical and financial

---

[9] *See also Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) ("Generally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts."); *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) ("Where the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer."); *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988) (describing past Supreme Court decision as setting forth principle that "no precise rule governs relations between federal district courts possessing jurisdiction, but the general principle is to avoid duplicative litigation."); *Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986) ("Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders."); *Carver v. Knox Cty.*, 887 F.2d 1287, 1293 (6th Cir. 1989) (noting the "intolerable situation" of a state subject to conflicting injunctions and explaining that "the only common sense approach" is for the courts to speak "with a single voice"); *Great N. Ry. Co. v. Nat'l R.R. Adjustment Bd.*, 422 F.2d 1187, 1193 (7th Cir. 1970) ("The purposes of the rule [of comity] are to avoid unnecessarily burdening courts and to avoid possible embarrassment from conflicting results."); *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953 (8th Cir. 2001) (noting "the general policy against concurrent federal litigation"); *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases."); *MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 987 (10th Cir. 1992) (citing to *Commodity Futures Trading Com'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983), which in turn quotes *Bergh*, 535 F.2d at 507); *S. Mills, Inc. v. Nunes*, 586 F. App'x 702, 706 (11th Cir. 2014) (approving the district court's decision to "avoid[] multiplicitous proceedings and potentially conflicting judgments"); *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (cautioning against simultaneous suits that would "potentially produce contradictory decisions" and "in turn, generate dueling appeals").

separation from abortion-related activities required by the 2019 Rule, *id.* ¶ 49.  Simply put, it would appear impossible for Defendants to comply with the currently stayed preliminary injunctions from the Washington and Oregon courts (both of which enjoined the entire 2019 Rule nationwide), and also comply with the relief Vita Nuova has requested here.  Lest there be any question that Vita Nuova invites direct conflict, the Complaint notes for each of Claims 2 through 4 that "the nationwide injunctions in *Washington* and *Oregon* prevent[[10]] the Secretary from enforcing" the prohibitions Vita Nuova asks this Court to enforce.  *Id.* ¶¶ 38, 43, 47.

In short, to the extent that Plaintiff is concerned about the outcome of suits challenging the 2019 Rule, Plaintiff could present its arguments as an amicus supporting the Government in any ongoing proceedings in cases challenging the 2019 Rule.  But it may not use this litigation to collaterally attack a (hypothetical) adverse decision in another federal court.  Because the 2019 Rule already gives Plaintiff what Claims 1 through 4 seek, these claims are not justiciable.

For all these reasons, Vita Nuova cannot pursue its claims against the features of the 2000 Rule that have been superseded.  The Court thus should dismiss those claims for lack of jurisdiction.

## II.    Claims 1 Through 4 Must Be Dismissed for Additional Reasons as Well

For the reasons explained above, Plaintiff's attempt to challenge superseded features of the 2000 Rule is not justiciable.  But even if (counterfactually) the challenged 2000 features had not been superseded—*i.e.*, even if the 2019 Rule had never been issued—Vita Nuova would still lack standing here.

As to Claim 1, the gravamen of this Claim is Vita Nuova's assertion that "[t]he Secretary is enforcing an agency rule that not only permits but *compels* Title X recipients to provide abortion

---

[10] As noted above, prevented.

counseling and referrals upon demand," even where doing so is contrary to a recipient's conscience objections relating to abortion. *Id.* ¶ 31. But as explained in the 2019 Rule, 84 Fed. Reg. at 7,716, HHS acknowledged as early as 2008 that the "regulatory requirement that grantees must provide counseling and referrals for abortion upon request . . . is inconsistent with the health care provider conscience protection statutory provisions." 73 Fed. Reg. 78,072, 78,087 (Dec. 19, 2008). HHS has since made clear in a subsequent rule that the 2019 Rule "did not alter HHS's preexisting policy dating back at least to 2008 of not enforcing requirements of the 2000 regulations where they may conflict with the Federal conscience statutes as explained in this rule." 84 Fed. Reg. 23,170, 23,191 n.64 (May 21, 2019).

Indeed, HHS informed the courts that issued preliminary injunctions against the 2019 Rule that HHS did not understand the injunctions to require alteration of that longstanding policy,[11] and none of the courts (or, for that matter, any of the plaintiffs in those cases) objected. Given HHS's longstanding policy of not enforcing any abortion counseling and referral requirements against entities like Vita Nuova, Vita Nuova has no standing to challenge them (again, even putting aside that the requirements no longer exist for anyone because they have been repealed or superseded). *See, e.g.*, *Ragsdale v. Turnock*, 841 F.2d 1358, 1365-66 (7th Cir. 1988) ("We believe that the defendants' now public policy of non-enforcement of the [statute and regulations] . . . moots any challenge to that requirement. . . . Federal courts do not, as a rule, enjoin conduct which has been discontinued with no real prospect that it will be repeated.").

As to Claims 2 through 4, Vita Nuova acknowledges that the superseded regulatory features here concern solely what *other* providers were *allowed* to do and thus do not injure it directly. *See, e.g.*, Compl. ¶ 37 (asserting that "[t]he Secretary is currently funding Title X

---

[11] *See, e.g.*, No. 1:19-cv-01103-RDB, ECF No. 42 (D. Md. May 2, 2019).

programs that provide abortion referrals and counseling"). Vita Nuova nonetheless contends that it is injured by these superseded features because it "must compete with entities that should be categorically excluded from the Title X program." *Id.* ¶ 63. "The nub of the 'competitive standing' doctrine is that when a challenged agency action authorizes allegedly illegal transactions that will *almost surely* cause [a plaintiff] to lose business, there is no need to wait for injury from specific transactions to claim standing." *El Paso Nat. Gas Co. v. FERC*, 50 F.3d 23, 27 (D.C. Cir. 1995) (emphasis added). By contrast, courts reject claims to competitor standing that are "conjectural" or fail to demonstrate that an agency decision "will almost surely" cause a plaintiff competitive injury. *DEK Energy Co. v. FERC*, 248 F.3d 1192, 1196 (D.C. Cir. 2001); *see also United Transp. Union v. ICC*, 891 F.2d 908, 913 n.7 (D.C. Cir. 1989) (in assessing competitor standing, court need not "accept allegations founded solely on the complainant's speculation").

The Complaint's wholly conclusory allegations fall woefully short of establishing competitor standing. The Complaint does not allege that Vita Nuova has ever applied for Title X funds or sought to be a subrecipient under a Title X grant, does not specify where it wishes to provide Title X services, does not identify other Title X providers in that area[12] that undertake any of the actions to which it objects, and does not plead facts demonstrating that Vita Nuova would be a qualified applicant (or subrecipient) for Title X funds.

---

[12] Plaintiff's failure to identify the area in which it wishes to provide services is particularly important because Title X funds are allocated on a state by state basis. *See* https://hhs.gov/opa/sites/default/files/FY18-Title-X-Services-FOA-Final-Signed.pdf at 13-15. And in making grant determinations, HHS considers, among other things, "[t]he extent to which the applicant's family planning services are needed locally," *id.* at 43 and "[t]he relative availability of non-federal resources within the community to be served and the degree to which those resources are committed to the project," *id.* at 44. Realistically then, Vita Nuova—if and when it decides to apply for Title X grants (or seeks to be a subrecipient under a Title X grant)— would not be competing with everyone, but only with other providers in its area.

And even putting all that aside, there is an even more basic problem with Vita Nuova's theory of competitor standing. Vita Nuova simply assumes that its alleged competitors would leave the program rather than comply with the new Rule.[13] *See* Compl. ¶ 63 (alleging that "Vita Nuova must compete with entities that should be categorically excluded from the Title X program on account of the abortion-promoting activities and their affiliations with abortion providers"). But if many of these competitors would respond to the new Rule by *complying* with it, then there is no competitive injury even under Vita Nuova's theory. Vita Nuova, however, pleads no facts on this issue—indeed, as noted previously, it does not even identify what geographic area in which it wishes to offer coverage.

For all these reasons, the Complaint certainly does not adequately allege that the superseded 2000 provisions "will almost surely cause" Vita Nuova to lose out on Title X funds (at whatever unspecified time that Vita Nuova actually applies for those funds). These claims too must be dismissed even apart from the reasons set forth in Part I.

### III. Claim 5 Must Be Dismissed Because Vita Nuova Has Not Adequately Pled That the Challenged Regulation Requires Anything of Vita Nuova

Claim 5 of the Complaint purports to challenge 45 C.F.R. § 75.300(d). Compl. ¶¶ 50-56. Section 75.300(d) provides, in full, as follows:

> In accordance with the Supreme Court decisions in *United States v. Windsor* and in *Obergefell v. Hodges*, all recipients must treat as valid the marriages of same-sex couples. This does not apply to registered domestic partnerships, civil unions or similar formal relationships recognized under state law as something other than a marriage.

45 C.F.R. § 75.300(d).

---

[13] At least in Texas, this assumption appears unwarranted. *See* https://www.hhs.gov/about/news/2019/09/30/hhs-issues-supplemental-grant-awards-to-title-x-recipients.html (last visited Oct. 4, 2019) (identifying on a state by state basis which grantees have withdrawn from the program rather than comply with the 2019 Rule, identifying no withdrawing Texas grantees, and in fact identifying two Texas grantees receiving supplemental grants).

Vita Nuova has not demonstrated any actual injury from this provision because the Complaint does not adequately plead that section 75.300(d) requires Vita Nuova to do anything at all.[14]  As an initial matter, as noted above, the Complaint does not allege that Vita Nuova has ever applied for Title X funds or sought to be a subrecipient under a Title X grant.  The complaint also does not plead facts demonstrating that Vita Nuova would be a qualified applicant (or subrecipient) for Title X funds if it did apply.  Under these circumstances, any claim that section 75.300(d)—which applies only to "recipients" of HHS awards—causes injury to Vita Nuova is wholly speculative.

Further, even if the Complaint *did* plead facts showing that section 75.300(d) does or will apply to Vita Nuova, Claim 5 should still be dismissed because the Complaint does not allege that there is any credible threat that the regulation will be enforced against Vita Nuova.  Where, as here, a party brings a pre-enforcement challenge to a regulation, in order to establish an Article III injury, the party must show there is a credible threat that the regulation will be enforced against it. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014); *Empower Texans, Inc. v. Nodolf*, 306 F. Supp. 3d 961, 965 (W.D. Tex. 2018).  Here, Vita Nuova has failed to allege any credible threat of enforcement on the part of HHS.  Vita Nuova has identified no instance in which HHS has penalized an award recipient because the recipient does not recognize same-sex marriages.  Absent a credible threat that HHS will (or would) enforce section 75.300(d) against Vita Nuova, Claim 5 must be dismissed.

## IV.    Claim 6 Must Be Dismissed Because Plaintiff's Asserted Injury is Wholly Speculative

Claim 6 of the Complaint challenges 42 U.S.C. § 300a-7(c).  *See* Compl. ¶¶ 57-62.  That

---

[14] To the extent this argument is more properly asserted under Rule 12(b)(6), Defendants alternatively move to dismiss this claim for failure to state a claim.

17

provision is part of what are commonly known as the Church Amendments, which prohibit discrimination based on religious beliefs or moral convictions regarding sterilization procedures, abortion, or, more generally, health services or research activities.  The discrimination proscribed by this provision includes discrimination based on an individual's performance (or assistance in) such a procedure or activity, an individual's refusal to perform (or assist in) such a procedure or activity, and an individual's religious beliefs or moral convictions about such procedures more generally.  42 U.S.C. § 300a-7.  Plaintiff asserts that the portion of 42 U.S.C. § 300a-7(c)—which has been existence since 1973 and that prevents discrimination against individuals who perform or assist in the performance of abortions—violates RFRA (the same section also contains a similar provision, that Vita Nuova does not challenge, which prohibits discrimination against individuals and entities that refuse to do so).  *See* Compl. ¶¶ 57-62.

Here again, Plaintiff has failed to established any concrete and imminent injury sufficient to confer Article III standing.  First, the Complaint does not adequately allege that Plaintiff has been forced to employ individuals who perform or assist in the performance of abortions.  Indeed, given Plaintiff's recent creation and its lack of prior participation in HHS programs, it is unclear whether Plaintiff, in fact, has any employees at all.  Nor does Plaintiff allege that any prospective employees have attempted to secure employment with Plaintiff despite performing or assisting with such services.  Plaintiff's allegation that it must act contrary to its sincere religious beliefs in order to participate in the Title X program—which Plaintiff has never participated in before—is therefore purely speculative.  *See, e.g.*, *Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016) (constitutional challenge to statute failed for lack of standing where claim of future injury was "entirely conjectural").  Claim 6 of Plaintiff's Complaint should be dismissed for lack of standing.

18

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this case in its entirety.

Dated:  October 7, 2019     Respectfully submitted,

             JOSEPH H. HUNT
             Assistant Attorney General

             ERIN NEALY COX
             United States Attorney

             MICHELLE R. BENNETT
             Assistant Branch Director

             */s/ Andrew M. Bernie*
             ANDREW M. BERNIE (DC Bar No. 995376)
             Trial Attorney
             U.S. Department of Justice
             Civil Division, Federal Programs Branch
             1100 L Street NW
             Washington, DC 20005
             Tel.: (202) 616-8488
             Fax: (202) 616-8470
             andrew.m.bernie@usdoj.gov

             BRIAN W. STOLTZ
             Assistant United States Attorney

             *Counsel for Defendants*

**Certificate of Service**

On October 7, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew M. Bernie*
Andrew M. Bernie