UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**Vita Nuova Inc.**, on behalf of itself and others similarly situated,

Plaintiff,

v.

**Alex M. Azar II**, in his official capacity as Secretary of Health and Human Services; **United States of America**,

Defendants.

Case No. 4:19-cv-00532-O

# BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff and the Proposed Class*

# TABLE OF CONTENTS


Table of contents ..... i

Table of authorities ..... ii

I. Vita Nuova has standing to seek a declaratory judgment of its rights under the Religious Freedom Restoration Act and The Title X statute, and its claim for declaratory relief has not become moot ..... 2

A. Vita Nuova has standing to seek declaratory relief ..... 4

1. The declaratory relief requested by Vita Nuova will not contradict or collaterally attack any injunction that might be issued against the enforcement of the 2019 rule ..... 8

2. The government's claimed "policy" of exempting religious entities from the abortion-counseling and abortion-referral requirements does not defeat standing ..... 9

3. Vita Nuova is suffering a present-day, non-speculative injury from the uncertainty over its future eligibility to participate in the Title X program ..... 11

B. Vita Nuova's claim for declaratory relief has not become moot ..... 11

II. Vita Nuova has standing to challenge 45 C.F.R. § 75.300(d), and the government's recently announced nonenforcement policy does not moot Vita Nuova's claim ..... 13

III. Vita Nuova has standing to challenge the Church Amendment ..... 15

Conclusion ..... 16

Certificate of service ..... 17

# TABLE OF AUTHORITIES

## Cases


*Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) .......... 6

*Arizona Grocery Co. v. Atchison*, 284 U.S. 370 (1932) .......... 9

*Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Local 174*, 203 F.3d 703 (9th Cir. 2000) .......... 6

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) .......... 6

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) .......... 14

*Davis v. Federal Election Comm'n*, 554 U.S. 724 (2008) .......... 4

*DeOtte v. Azar*, 393 F. Supp.3d 490 (N.D. Tex. 2019) .......... 9

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) .......... 12

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) .......... 5

*Haskell v. Harris*, 669 F.3d 1049 (9th Cir. 2012) .......... 6

*Hose v. INS*, 180 F.3d 992 (9th Cir. 1999) .......... 6

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) .......... 9

*Massachusetts v. EPA*, 549 U.S. 497 (2007) .......... 3, 11

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) .......... 4

*Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067 (9th Cir. 2012) .......... 6

*NextG Networks of NY, Inc. v. City of New York*, 513 F.3d 49 (2d Cir. 2008) .......... 13

*Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993) .......... 14

*Stenberg v. Carhart*, 530 U.S. 914 (2000) .......... 15

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......... 3, 7, 11

*Trinity Lutheran Church of Columbia v. Comer*, 137 S. Ct. 2012 (2017) .......... 14

*United States v. De Gross*, 960 F.2d 1433 (9th Cir. 1992) .......... 6


## Statutes


28 U.S.C. § 2201(a) .......... 1, 2


## Other Authorities


Charles Alan Wright et al., Federal Practice and Procedure (4th ed.) .......... 1, 12, 13


## Rules


45 C.F.R. § 75.300(d) .......... 13, 14, 15

Vita Nuova is suffering immediate, present-day injury from the legal uncertainty surrounding the rules governing Title X, and it has standing to seek a declaration of its rights to participate in the Title X program. Vita Nuova intends to apply for Title X funding at the next available opportunity in 2021, and it is attempting to raise funds and recruit employees in an effort to establish itself as a credible applicant for Title X funding. *See* Affidavit of Carol Everett at ¶ 16 (attached as Exhibit 1). But it is far from certain that Vita Nuova will be eligible to receive Title X funding in 2021—even with the 2019 rule in effect—because a court might re-enjoin the implementation of the 2019 rule, and because a new Administration might take office and reinstate the compulsory abortion referrals and compulsory abortion counseling. All of this inflicts present-day injury on Vita Nuova by hindering its current fundraising and recruitment efforts. Several potential donors, for example, are unwilling to give money to Vita Nuova until it receives judicial assurance that it will remain eligible to participate in Title X when it applies for funding in 2021—regardless of which party occupies the White House, and regardless of whether the 2019 rule survives judicial review. *See* Affidavit of Steven F. Hotze ¶¶ 6–8 (attached as Exhibit 2); Affidavit of Richard W. Humphrey ¶¶ 4–6 (attached as Exhibit 3).

The uncertain status of Vita Nuova's rights confers standing to seek declaratory relief. The continued uncertainty over whether Vita Nuova can even participate in the Title X program is already hindering Vita Nuova's fundraising and recruitment efforts, and it presents a "substantial risk" that Vita Nuova will be excluded from Title X on account of its religious beliefs. The Declaratory Judgment Act was designed to provide relief in precisely these types of situations, where the uncertain status of one's legal rights inflicts present-day harm or the substantial risk of future injury. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2757 (4th ed.) ("It is clear that in some instances a declaratory judgment is proper

even though there are future contingencies that will determine whether a controversy ever actually becomes real.").

## I. Vita Nuova Has Standing To Seek A Declaratory Judgment Of Its Rights Under The Religious Freedom Restoration Act And The Title X Statute, And Its Claim For Declaratory Relief Has Not Become Moot

The Ninth Circuit's order of July 11, 2019, and the Secretary's decision to begin enforcing the 2019 rule on July 15, 2019, have mooted most — but not all — of Vita Nuova's original claims for relief concerning the Title X statute and the previous regime that the Secretary had been enforcing. Vita Nuova, for example, can no longer ask the Court to "set aside" the 2000 rules under section 706 of the APA, because the courts have allowed the 2019 rule to take effect. *See* Original Complaint (ECF No. 1) at ¶¶ 36(c), 41(c), 45(c), 49(c). A court cannot "vacate" a rule that has been superseded by a subsequent agency rule. In like manner, Vita Nuova's claims for injunctive relief against the Secretary's enforcement of the 2000 rule have become moot because the Secretary is no longer enforcing that rule and has no desire to resume its enforcement. *See* Original Complaint (ECF No. 1) at ¶¶ 36(b), 41(b), 45(b), 49(b).[1] The first amended complaint has abandoned those claims — as it must — in response to these recent developments.

But Vita Nuova *still* has standing seek a declaratory judgment under 28 U.S.C. § 2201, even though the 2019 rule has been allowed to take effect. Vita Nuova is still suffering present-day injury — as well as a "substantial risk" of future injury — because it is far from certain that the 2019 rule will remain in effect in the spring of 2021, the time at which the next round

1. The Secretary *is* continuing to enforce the 2000 rule to the extent it permits funding of Title X projects that fail to maintain physical separation from abortion-related activities. *See* Compliance with Statutory Program Integrity Requirements, 84 Fed. Reg. 7,714, 7,791 (March 4, 2019) (quoting 42 C.F.R. § 59.19(a)). But the 2019 rule provides that this funding will cease on March 4, 2020, and Vita Nuova will not suffer Article III injury if the Secretary funds those non-compliant Title X projects during that limited window of time.

of Title X grantees will be chosen. The ongoing lawsuits against the 2019 rule raise the prospect that a court will vacate the rule or resurrect the nationwide injunctions against its enforcement. And the 2019 rule is certain to be revoked if a Democratic Administration takes office in January 2021. In these circumstances, Vita Nuova is entitled to seek a judicial declaration of its rights under the Religious Freedom Restoration Act and the Title X statute, before it undertakes the long and arduous process of preparing and submitting a credible application for Title X funds.

The uncertain future of the 2019 rule is inflicting present-day injury on Vita Nuova by hindering its ability to raise funds and recruit employees. *See* Affidavit of Carol Everett ¶ 16 ("This present-day uncertainty inflicts present-day injury on Vita Nuova, because it hinders our fundraising efforts as well as our efforts to recruit doctors, nurses, and employees.") (attached as Exhibit 1). Several potential donors have told Vita Nuova that they are unwilling to contribute until Vita Nuova receives judicial assurance that it will remain eligible to participate in Title X, regardless of what happens in the ongoing litigation over the 2019 rule. *See* Affidavit of Steven F. Hotze ¶¶ 6–8 (attached as Exhibit 2); Affidavit of Richard W. Humphrey ¶¶ 4–6 (attached as Exhibit 3). This present-day injury is caused by the government's previous enforcement of the 2000 rule and the prospect of its resumed enforcement, and it will be redressed by a declaration that RFRA and federal conscience-protection laws prohibit Secretary Azar and his successors from requiring Title X recipients to provide abortion counseling or abortion referrals. *See* First Amended Complaint (ECF No. 16) at ¶¶ 38. A judicial declaration of that sort will provide Vita Nuova and its donors and supporters with the assurance they need to invest in an entity that aspires to become a pro-life Title X recipient.

Vita Nuova is also facing a "substantial risk" of future injury. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (an allegation of future injury will confer standing if there is a "'substantial risk' that the harm will occur." (citation omitted)); *see also Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) ("[E]ven a small probability of injury is sufficient

to create a case or controversy—to take a suit out of the category of the hypothetical—provided of course that the relief sought would, if granted, reduce the probability" (quoting *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993)).[2] There is a substantial risk, for example, that Vita Nuova will be disqualified from participating in Title X if the Secretary resumes enforcement of the 2000 rule, in response to either a nationwide injunction or a new administration that revokes the 2019 rule. The substantial risk of that future injury is caused by the prospect of the Secretary's resumed enforcement of the 2000 rule. And the substantial risk of that future injury will be eliminated by a declaration that RFRA and the Title X statute prohibit the government from requiring Title X recipients to provide abortion counseling or abortion referrals. *See* First Amended Complaint (ECF No. 16) at ¶ 38.

The government contends that Vita Nuova lacked standing to bring this claim at the outset of the lawsuit, and it further contends that any "case or controversy" that might have existed at the time of the original complaint became moot after the Secretary began enforcing the 2019 rule on July 15, 2019. *See* Defs.' Mot. to Dismiss Am. Compl. (ECF No. 17) at 8–13. None of the government's arguments have merit.

### A. Vita Nuova Has Standing To Seek Declaratory Relief

"Standing" is assessed at the outset of a lawsuit, so Vita Nuova's standing is determined by the world that existed on July 3, 2019—the date on which Vita Nuova filed its original complaint. *See Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." (emphasis added)). Events that occurred after July 3, 2019—such as the Ninth Circuit's order of July 11, 2019, and the Secretary decision to begin enforcing the 2019 rule on July 15, 2019—are relevant only in considering whether Vita

2. *See also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) (conferring standing on conventional alfalfa farmers to challenge an agency decision that gave rise to a "significant risk of gene flow to non-genetically-engineered varieties of alfalfa.").

Nuova's claims have become moot. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 184 (2000) (warning courts and litigants not to conflate standing and mootness). We will first discuss Vita Nuova's standing to seek a judicial declaration of its rights, and then consider whether post-filing events have mooted Vita Nuova's claims.

The Secretary was enforcing the 2000 rule and not the 2019 rule when Vita Nuova sued on July 3, 2019, and the Secretary did not begin enforcing the 2019 rule until July 15, 2019—nearly two weeks after Vita Nuova filed its lawsuit. The Secretary was enforcing the 2000 rule because the federal district courts in *Washington v. Azar* and *Oregon v. Azar* had issued nationwide injunctions against the 2019 rule before it took effect. A three-judge panel of the Ninth Circuit stayed those nationwide injunctions on June 20, 2019—13 days before Vita Nuova filed its lawsuit. *See* Defs.' Mot. to Dismiss Am. Compl. (ECF No. 17) at 5; *see also* Complaint (ECF No. 1) ¶ 26. But the Secretary continued enforcing the 2000 rule after the Ninth Circuit issued its stay, and did not begin enforcing the 2019 rule until July 15, 2019.[3] The Secretary's delay was understandable, because the Ninth Circuit's en banc rehearing order of July 3, 2019, led many to believe that the Court had vacated its earlier stay of the nationwide injunctions, and that the nationwide injunctions (and the 2000 rule) remained in effect. The Court wrote:

> Upon the vote of a majority of nonrecused active judges, it is ordered that these cases be reheard en banc pursuant to Federal Rule of Appellate Procedure 35(a) and Circuit Rule 35-3. *The three-judge panel Order on Motions for Stay Pending Appeal in these cases shall not be cited as precedent by or to any court of the Ninth Circuit.*

3. *See* Office of Population Affairs, Title X Final Rule Compliance and Enforcement, available at https://bit.ly/3224GdH (last visited on December 3, 2019) ("Guidance sent to the grantees stated that compliance with the requirements of the Final Rule, except for the physical-separation requirements, was required as of Monday, July 15, 2019.") (attached as Exhibit 4).

*See* Exhibit 6 (emphasis added). In addition, the Ninth Circuit has frequently described its en banc rehearing orders effecting a "vacatur" of the panel's decision and judgment. *See, e.g.*, *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) ("We vacated the panel decision and granted rehearing en banc."); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011) ("We vacated the panel's decision after a majority of our court's non-recused active judges voted to rehear the appeal en banc").[4] So neither the stay of the nationwide injunctions nor the en banc rehearing order of July 3, 2019, led the Secretary to begin *enforcing* the 2019 rule, and the Secretary was continuing to enforce the 2000 rule when Vita Nuova sued on July 3, 2019.[5]

The en banc Ninth Circuit, however, issued an order on July 11, 2019, which clarified that its order of July 3, 2019, had *not* vacated the earlier stay of the nationwide injunctions:

> Pursuant to prior order of the Court upon granting reconsideration en banc, the three-judge panel Order on Motions for Stay Pending Appeal in these cases was ordered not be cited as precedent by or to any court of the Ninth Circuit. However, the order granting reconsideration en banc did not vacate the stay

4. *See also Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Local 174*, 203 F.3d 703, 706 (9th Cir. 2000), as amended (Mar. 8, 2000) ("We vacated the panel's decision and agreed to rehear the appeal en banc."); *Hose v. INS*, 180 F.3d 992, 994 (9th Cir. 1999) ("We vacated the panel's decision and agreed to rehear the appeal en banc."); *United States v. De Gross*, 960 F.2d 1433, 1435 (9th Cir. 1992) ("The panel's judgment was vacated, however, by our decision to rehear this case en banc."). Other rulings of the Ninth Circuit declare that an en banc rehearing order vacates the panel's "opinion." *See, e.g.*, *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) ("We then took this case en banc, thereby vacating the panel's opinion."); *Haskell v. Harris*, 669 F.3d 1049, 1055 n.2 (9th Cir. 2012) ("The case was called en banc, thereby vacating the panel opinion.").
5. *See* Office of Population Affairs, Title X Final Rule Compliance and Enforcement, available at https://bit.ly/3224GdH (last visited on December 3, 2019) (attached as Exhibit A) ("Guidance sent to the grantees stated that compliance with the requirements of the Final Rule, except for the physical-separation requirements, *was required as of Monday, July 15, 2019*." (emphasis added)); E-mail from Shannon O. Royce, Esq, Director of The Partnership Center at the U.S. Department of Health and Human Services (attached as Exhibit 5) ("Compliance with the requirements of the Final Rule, except for the physical-separation requirements, *is therefore required as of Monday, July 15, 2019*." (emphasis added)).

> order itself, so it remains in effect. Thus, the motions for administrative stay remain pending and were not mooted by the grant of reconsideration en banc.

*See* Exhibit 7. It was only after the Ninth Circuit issued this clarifying order that the Secretary began enforcing the 2019 rule on July 15, 2019. *See* footnote 5, *supra*.

The standing question turns on whether Vita Nuova was suffering Article III injury on July 3, 2019—the date on which Vita Nuova filed suit—and whether any of Vita Nuova's requested relief would redress the injuries that existed on that date. It is undisputed that the Secretary was enforcing the 2000 rule—and not the 2019 rule—when Vita Nuova filed its lawsuit on July 3, 2019, even though the Ninth Circuit would have allowed the Secretary to begin enforcing the 2019 rule as early as June 20, 2019.[6] Because Vita Nuova is unwilling to provide abortion counseling or abortion referrals, it was ineligible to participate in the Title X program on July 3, 2019, and there was a substantial risk that Vita Nuova would remain ineligible when it intends to apply for Title X funding in 2021. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (an allegation of future injury will confer standing if there is a "'substantial risk' that the harm will occur." (citation omitted).[7] The substantial risk of Vita Nuova's future ineligibility came from the prospect that the Secretary would continue or resume enforcement of the 2000 rule, either on account of the nationwide injunctions or on account of a new administration that revokes the 2019 rule.

The government denies that Vita Nuova could assert injury in fact on July 3, 2019, because it says "there was no injunction of the 2019 rule in effect at the time Plaintiff filed its suit." Defs.' Mot. to Dismiss Am. Compl. (ECF No. 17) at 8. But the government was still

---

6. Vita Nuova's complaint misconstrued the Ninth Circuit's en banc rehearing order of July 3, 2019, when it wrote: "On July 3, 2019, however, the Ninth Circuit ordered the *Washington*, *Oregon*, and *California* cases reheard en banc and vacated the earlier stay issued by the three-judge panel. As a result of this order, the injunctions issued in *Washington*, *Oregon*, and *California* remain in force." Complaint (ECF No. 1) ¶ 29. The Ninth Circuit's subsequent order of July 11, 2019—which issued after Vita Nuova filed its complaint on July 3, 2019—made clear that the previous order had not vacated the stay and had not resurrected the nationwide injunctions.

7. The "substantial risk" of Vita Nuova's future exclusion comes from

*enforcing* the 2000 rule on July 3, 2019, and it did not start enforcing the 2019 rule until after the Ninth Circuit issued its order of July 11, 2019, which clarified that the stay of the nationwide injunctions remained in effect. In all events, Vita Nuova would have had standing even if the Secretary had been enforcing the 2019 rule on or before July 3, 2019, because Vita Nuova's injury—and its need for declaratory relief—comes from the continued uncertainty over whether Vita Nuova will be eligible for Title X funding in 2021 on account of its pro-life practices and beliefs.

The government contests Vita Nuova's theory of standing on three additional grounds, but none of its arguments have merit.

### 1. The Declaratory Relief Requested By Vita Nuova Will Not Contradict Or Collaterally Attack Any Injunction That Might Be Issued Against The Enforcement Of The 2019 Rule

The government claims that Vita Nuova's requested relief is improper because it will "interfere with the remedial authority of other district courts" and "collaterally attack a (hypothetical) adverse decision in another federal court." Defs.' Mot. to Dismiss Am. Compl. (ECF No. 17) at 10, 11. The government is mistaken. The declaratory relief that Vita Nuova is seeking will not undermine, contradict, or in any way interfere with an injunction that blocks Secretary Azar from enforcing the 2019 rule. And the Secretary can comply with a nationwide injunction that forbids him to implement the 2019 rule while simultaneously obeying a declaratory judgment from this Court that preserves Vita Nuova's right to participate in the Title X program. Vita Nuova is asserting its own rights under the Religious Freedom Restoration Act and federal conscience-protection laws, and whether those statutes protect Vita Nuova and other pro-life entities has nothing to do with the procedural or substantive validity of the 2019 rule. The government is equating an injunction that forbids Secretary Azar to enforce the 2019 rule with an injunction that directs the Secretary to exclude Vita Nuova from the Title X program.

The requested relief is no different from the situation in *DeOtte v. Azar*, 393 F. Supp.3d 490 (N.D. Tex. 2019), where the plaintiffs filed suit after a federal district court in Philadelphia had issued a nationwide injunction against the enforcement of a rule that would have established religious exemptions to the Obama Administration's Contraceptive Mandate. The plaintiffs in *DeOtte* argued that the Religious Freedom Restoration Act compelled the religious exemptions described in the now-enjoined rule, and asked the Court to issue declaratory and injunctive relief to protect their statutory rights under RFRA. The Court granted the requested relief, but nothing in the Court's injunction "interfered with" or "collaterally attacked" the nationwide injunction entered in Philadelphia. The nationwide injunction merely prevented federal officials from enforcing their rule, and federal officials can fully comply with that injunction while simultaneously obeying the judgment in *DeOtte*. The Secretary can likewise simultaneously comply with the requested declaratory relief and any injunctions that might be entered against the enforcement of the 2019 rule.

**2. The Government's Claimed "Policy" Of Exempting Religious Entities From The Abortion-Counseling and Abortion-Referral Requirements Does Not Defeat Standing**

The government also tries to defeat standing by claiming that it would have exempted Vita Nuova and other religious objectors from the requirement to provide abortion counseling and abortion referrals, and it claims that it has had a "policy" to this effect since 2008. *See* Defs.' Mot. to Dismiss Am. Compl. (ECF No. 17) at 11–12. But an agency cannot "interpret" its rules to create exemptions when the text imposes a categorical requirement. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (forbidding courts to defer to an agency's interpretation of its rules "unless the regulation is genuinely ambiguous."); *id.* ("[B]efore concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction."). And an agency has no authority to depart from the unambiguous language a rule that has gone through notice-and-comment procedures. *See Arizona Grocery Co. v. Atchison*, 284 U.S. 370, 390 (1932) (forbidding agencies to change rules in an adjudication).

The government is also mistaken to claim that HHS has a "longstanding policy" of not enforcing abortion counseling and referral requirements against objecting entities such as Vita Nuova. Defs.' Mot. to Dismiss Am. Compl. (ECF No. 17) at 12. The conscience rule that HHS announced on December 19, 2008, which acknowledged for the first time that the abortion counseling and referral requirements in the 2000 rule violate federal conscience-protection statutes,[8] was rescinded promptly after President Obama took office,[9] and there is no evidence that the Obama Administration's HHS shared the Bush Administration's view that religious entities should be exempt from the abortion counseling and referral requirements in the 2000 rule. Indeed, there were no pro-life entities that were awarded Title X grants during the Obama Administration.[10] And the agency's supposed "policy" of exempting religious objectors from the requirements to provide abortion counseling and abortion referrals is not binding on any future Secretary or future Administration, which can unilaterally revoke this policy and exclude Vita Nuova from the Title X program on account of its refusal to provide abortion counseling and abortion referrals. It is this uncertainty and lack of assurance that is inflicting Article III injury on Vita Nuova, which is why Vita Nuova seeks a judicial declaration that it can remain eligible to participate in Title X notwithstanding its pro-life beliefs and practices—before it invests resources in applying for Title X funds.

---

8. *See* Ensuring That Department of Health and Human Services Funds Do Not Support Coercive or Discriminatory Policies or Practices in Violation of Federal Law, 73 Fed. Reg. 78,072, 78,087 (December 19, 2008)
9. *See* Rescission of the Regulation Entitled "Ensuring That Department of Health and Human Services Funds Do Not Support Coercive or Discriminatory Policies or Practices in Violation of Federal Law"; Proposal, 74 Fed. Reg. 10207 (March 10, 2009); Regulation for the Enforcement of Federal Health Care Provider Conscience Protection Laws, 76 Fed. Reg. 9968 (February 25, 2011).
10. The first pro-life entity to receive a Title X grant is Obria, which was awarded $5.1 million in Title X funds by the Trump Administration. *See* Kenneth P. Vogel and Robert Pear, *Trump Administration Gives Family Planning Grant to Anti-Abortion Group*, New York Times (March 29, 2019), available at https://www.nytimes.com/2019/03/29/us/politics/trump-grant-abortion.html

#### 3. Vita Nuova Is Suffering A Present-Day, Non-Speculative Injury From The Uncertainty Over Its Future Eligibility To Participate In The Title X Program

Finally, the government claims that Vita Nuova's alleged injuries are too speculative to support Article III standing. Defs.' Mot. to Dismiss Am. Compl. (ECF No. 17) at 12–13. But Vita Nuova is suffering an immediate, present-day injury over the uncertainty surrounding the 2019 rule and the uncertainty surrounding whether Vita Nuova will be eligible to participate in Title X when the next round of grants is awarded in 2021. It has crimped Vita Nuova's fundraising and recruitment efforts. *See* Affidavit of Carol Everett ¶ 16; Affidavit of Steven F. Hotze ¶¶ 6–8 (attached as Exhibit 2); Affidavit of Richard W. Humphrey ¶¶ 4–6 (attached as Exhibit 3). And it imposes a "substantial risk" that Vita Nuova's future application for Title X funds will be disqualified (or at least disfavored) on account of Vita Nuova's unwillingness to provide abortion counseling or abortion referrals. *See Susan B. Anthony List*, 573 U.S. at 158 (an allegation of future injury will confer standing if there is a "'substantial risk' that the harm will occur." (citation omitted)); *Massachusetts*, 549 U.S. at 525 n.23 (2007) ("[E]ven a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of the hypothetical—provided of course that the relief sought would, if granted, reduce the probability" (citation omitted)). There is nothing "conjectural" about these alleged injuries—and even if there were, the *risk* of future injury is enough to confer standing under the Supreme Court's precedents.

### B. Vita Nuova's Claim For Declaratory Relief Has Not Become Moot

The government also argues that the Ninth Circuit's order of July 11, 2019, moots Vita Nuova's claims by clarifying that the 2019 rule is in full force and effect. *See* Defs.' Mot. to Dismiss Am. Compl. (ECF No. 17) at 8–9. We acknowledge that Vita Nuova can no longer pursue its now-abandoned APA claims against the 2000 rule in light of the Ninth Circuit's announcement. The APA claims were asking this Court to formally vacate and "set aside" the 2000 rule under 5 U.S.C. § 706, and a court cannot "set aside" an agency rule that has been repealed by a subsequent regulation. We also acknowledge that the Secretary's decision

to cease enforcement of the 2000 rule on July 15, 2019, moots Vita Nuova's previously asserted claims for injunctive relief. A court cannot enjoin a government official from enforcing an agency rule that has already been repealed and that is no longer being enforced.

But none of this moots Vita Nuova's claims for declaratory relief under 28 U.S.C. § 2201. Vita Nuova continues to suffer present-day injury—as well as a "substantial risk" of future injury—from the uncertain status of its rights under RFRA, the Title X statute, and federal conscience-protection laws. *See supra*, at 3–4. And these injuries are more than sufficient to allow Vita Nuova to seek a judicial declaration of its rights, even after the Ninth Circuit's order of July 11, 2019, and the Secretary's decision to begin enforcing the 2019 rule on July 15, 2019.

Neither the Ninth Circuit's ruling nor the Secretary's recent actions provide any assurance to Vita Nuova that it will remain eligible for Title X funding when the next round of grants are awarded in the spring of 2021. The legality and enforceability of the 2019 rule continues to be litigated in both the Fourth and the Ninth Circuits, and the Ninth Circuit's decision to stay the nationwide injunctions in *Washington* and *Oregon* is not the final word on the matter. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 n.7 (2005) (holding that a ruling from the Delaware Supreme Court does not moot an ongoing case because defendant "will petition [the U.S. Supreme] Court for a writ of certiorari"). The Secretary's decision to begin enforcing the 2019 rule also does not remove the uncertainty, because the 2019 rule is certain to be revoked if a Democratic Administration takes office in January of 2021. *See* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2757 (4th ed.) ("It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real.").

The government cites numerous authorities that hold (correctly) that a challenge to a statute or agency rule becomes moot when the challenged law is repealed. *See* Defs.' Mot. to

Dismiss Am. Compl. (ECF No. 17) at 8–9.[11] But none of these cases support the government's mootness argument because Vita Nuova is no longer challenging the 2000 rule, and it has expressly abandoned its APA challenge and its request for an injunction against the 2000 rule's enforcement. Vita Nuova is merely asking the Court for a declaration of its rights under the Religious Freedom Restoration Act and the Title X statute; it is seeking relief only against the Secretary rather than the rules that his predecessors enacted.

## II. Vita Nuova Has Standing To Challenge 45 C.F.R. § 75.300(d), And The Government's Recently Announced Nonenforcement Policy Does Not Moot Vita Nuova's Claim

45 C.F.R. § 75.300(d) compels every HHS grant recipient to recognize same-sex marriage, with no exceptions for religious entities. This rule categorically disqualifies Vita Nuova from participating in Title X, because Vita Nuova is a Christian organization and refuses to recognize same-sex marriage on account of its Christian faith. Unless this rule is vacated or its enforcement enjoined, Vita Nuova will not be eligible to receive Title X funds, and the efforts and resources that it invests in applying for Title X funds will be wasted.

The government denies that Vita Nuova has standing to challenge 45 C.F.R. § 75.300(d) because Vita Nuova has "never applied for Title X funds or sought to be a subrecipient under a Title X grant." Defs.' Mot. to Dismiss Am. Compl. (ECF No. 17) at 14. But one does not need to be a *previous* applicant to have standing to challenge an exclusionary or discrimina-

11. Some courts allow a party to continue challenging a repealed or expired agency rule if there "'if there is a reasonably concrete basis to anticipate that the expired rule will be reenacted in a form that will raise the same questions.'" *NextG Networks of NY, Inc. v. City of New York*, 513 F.3d 49, 54 (2d Cir. 2008) (quoting *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001)); *see also* 13C Charles Alan Wright et al., Federal Practice and Procedure § 3533.6 (3d ed.) ("Expiration will not moot an attack, moreover, if there is a reasonably concrete basis to anticipate that the expired rule will be reenacted in a form that will raise the same questions."). Vita Nuova does not believe that the prospect of the Fourth or Ninth Circuit's re-enjoining the enforcement of the 2019 rule (and thereby reviving the 2000 rule) is sufficiently "concrete" to justify invoking this exception to mootness.

tory policy. If a university excludes blacks from admission, for example, any prospective student has standing to challenge this policy so long as they intend to apply to that university in the future; standing would not be limited to previously rejected applicants. For the same reason, the government is wrong to assert that Vita Nuova must show that it will qualify for Title X funds when it applies for those funds in 2021. *See id*. The "injury" comes from the obstacle that 45 C.F.R. § 75.300(d) imposes to Vita Nuova's participation in the Title X program, and Vita Nuova need not show that will qualify for Title X funds in the absence of that obstacle, any more than a college applicant needs to show that he would have been admitted in the absence of a discriminatory or exclusionary admissions policy. *See Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing.").

The Secretary's recently announced Notice of Non-Enforcement does not moot Vita Nuova's claim. A defendant's voluntary cessation of allegedly unlawful conduct does not moot a case. *See City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."); *see also Trinity Lutheran Church of Columbia v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017). The government issued this non-enforcement policy after Vita Nuova filed its lawsuit, and it cannot use this post-filing change of policy to thwart judicial review. The Notice of Proposed Rulemaking is likewise incapable of mooting Vita Nuova's claim, as 45 C.F.R. § 75.300(d) remains in effect until the rulemaking process is completed. The government cites no authority allowing a mere Notice of Proposed Rulemaking to moot an ongoing challenge to an agency rule.

Nor can a governmental entity escape judicial review of an unlawful or unconstitutional rule by disclaiming an intent to enforce the rule according to its terms. In *Stenberg v. Carhart*, 530 U.S. 914 (2000), for example, the Court conferred standing on abortion providers who challenged Nebraska's partial-birth abortion statute on the ground that it would prohibit the dilation and evacuation (D&E) procedure—despite the fact that the Attorney General of Nebraska had specifically disclaimed an intent to enforce the statute against any doctor who performed D&E abortions. *See id.* at 938–46. The Court allowed the doctors' challenge to proceed because "future Attorneys General may choose to pursue physicians who use D & E procedures," and the mere *possibility* that a future Attorney General might enforce the statute against the D&E not only imposed an Article III injury on abortion providers, but also violated the Constitution by imposing an "undue burden" on women seeking abortions. *See id.* at 945–46. So too here—the agency's recently announced nonenforcement policy is not binding on anyone, and any future Secretary or future Administration can change this policy and exclude Vita Nuova from the Title X program.

Finally, the government is wrong to claim that Vita Nuova must allege that HHS will "enforce" 45 C.F.R. § 75.300(d) against it. 45 C.F.R. § 75.300(d) is not a regulation that gets implemented through enforcement proceedings. Instead, it purports to establish a qualification for receiving HHS grants. Vita Nuova no more needs to allege a future "enforcement" proceeding than a prospective college applicant who challenges a discriminatory or exclusionary admissions policy. 45 C.F.R. § 75.300(d) renders Vita Nuova ineligible to participate in Title X, and the Vita Nuova's injury comes from the exclusion rather than enforcement.

## III. Vita Nuova Has Standing To Challenge The Church Amendment

The Church Amendment, like 45 C.F.R. § 75.300(d), renders Vita Nuova ineligible for Title X funds. But it disqualifies Vita Nuova on account of its refusal to employ individuals who perform or assist in elective abortions. As a pro-life entity, Vita Nuova requires all of its

employees to respect the sanctity of human life at all times, both on and off the job, and it cannot operate as a pro-life organization if its employees perform or promote abortions on the side.

The government argues that Vita Nuova must allege that it has been "forced to employ" individuals who aid or abet abortions before it can have standing to challenge the Church Amendment. But the Church Amendment is inflicting present-day injury on Vita Nuova—as well as a "substantial risk" of future injury—because it prohibits Vita Nuova from receiving Title X funds unless it changes its employment practices and stops "discriminating" against those who perform or assist in elective abortions. Vita Nuova will never agree to change those policies as a condition of receiving federal funds, and the Church Amendment inflicts injury in fact by forcing Vita Nuova to choose between forfeiting Title X funding or forfeiting its status as a pro-life, Christian organization.

## CONCLUSION

The defendants' motion to dismiss should be denied.

Respectfully submitted.

/s/ Jonathan F. Mitchell

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiff and the Proposed Class*

Dated: December 3, 2019

## CERTIFICATE OF SERVICE

I certify that on December 3, 2019, I served this document through CM/ECF upon:

Andrew M. Bernie
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 616-8488 (phone)
(202) 616-8470 (fax)
andrew.m.bernie@usdoj.gov

*Counsel for the Defendants*

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff*
*and the Proposed Class*