IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| VITA NUOVA Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:19-cv-00532-O |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 3

I. Plaintiff Lacks Standing to Assert Claim 1, and Its Claim Is Moot. ........................................ 2

A. Plaintiff Has No Standing to Assert Claim 1 ........................................ 2

B. In the Alternative, Claim 1 Has Been Rendered Moot ........................................ 11

II. Plaintiff Lacks Standing to Pursue Claim 2, Which Is Also Now Moot ........................................ 12

III. Plaintiff Has Not Alleged a Non-Speculative Injury as to Claim 3 ........................................ 13

CONCLUSION ........................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Arizona Grocery Co. v. Atchison*,
284 U.S. 370 (1932) ........ 5

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) ........ 11

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) ........ 9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 8, 10, 11

*DeOtte v. Azar*,
393 F. Supp. 3d 490 (N.D. Tex. 2019) ........ 7

*FDIC v. Bank of Coushatta*,
930 F.2d 1122 (5th Cir. 1991) ........ 5

*Heckler v. Chaney*,
470 U.S. 821 (1985) ........ 5

*June Medical Servs. L.L.C. v. Gee*,
905 F.3d 787 (5th Cir. 2018) ........ 9

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) ........ 5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 8, 9

*McConnell v. Fed. Election Comm'n*,
540 U.S. 93 (2003) ........ 9

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ........ 10

*Oregon v. Azar*,
No. 6:19-cv-00317-MC (D. Or. Jun. 13, 2019) ........ 6

*Pennie v. Obama*,
255 F. Supp. 3d 648 (N.D. Tex. 2017) ........ 10

*Ragsdale v. Turnock*,
841 F.2d 1358 (7th Cir. 1988) ........ 13

*Susan B. Anthony List v. Dreihaus*,
573 U.S. 149 (2014) ..................................................................................................... 10

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ....................................................................................................... 5

*Williams v. Lew*,
819 F.3d 466 (D.C. Cir. 2016) ..................................................................................... 14

*Young Advocates for Fair Education v. Cuomo*,
359 F. Supp. 3d 215 (E.D.N.Y. 2019) ........................................................................... 9

**Statutes**

42 U.S.C. § 300a-7 ...................................................................................................... 2, 13

**Regulations**

45 C.F.R.§ 75.300 ..................................................................................................... 2, 12, 13

73 Fed. Reg. 78,072 (Dec. 19, 2008) ..................................................................................... 4

84 Fed. Reg. 7,714 (Mar. 4, 2019) ......................................................................................... 4

84 Fed. Reg. 23,170 (May 21, 2019) ..................................................................................... 4

**Miscellaneous**

Charles Alan Wright *et al*., *Federal Practice and Procedure* ............................................. 12

## INTRODUCTION

The Court should grant Defendants' motion to dismiss the amended complaint. Plaintiff's leading claim is that—despite a subsequent 2019 Rule that has already gone into effect—Plaintiff ***may be*** required to abide by different regulations issued in 2000 that the 2019 Rule explicitly replaced. Under well settled case law, Plaintiff lacks standing to challenge a superseded regulation, and Plaintiff cannot establish a live controversy here by speculating that the 2019 Rule might be struck down by another court or that a hypothetical future administration might re-promulgate the 2000 regulations. That is particularly true in light of HHS' longstanding exercise of its enforcement discretion not to require religious objecting entities like Plaintiff to provide abortion counseling or abortion referrals. Thus, even if a court were to vacate the 2019 Rule or reinstate nationwide injunctions against its enforcement, there is no reason to believe Plaintiff would be injured, much less by an act of Defendants. Alternatively, to the extent Plaintiff relies on a nationwide injunction against enforcement of the 2019 Rule that Plaintiff believed (incorrectly) was in place when Plaintiff filed its case, Plaintiff's challenge to the 2000 Rule is now moot; that injunction has been stayed and the 2019 Rule has gone into effect.

Indeed, Plaintiff's assertion of jurisdiction has no logical limit. It is founded on the notion that, although Plaintiff has no objection to the rules currently in place, it is worried that more than a year from now (in the Spring of 2021) there *might* be a different set of rules in place to which plaintiff would object. But if that were enough to establish jurisdiction, anyone could challenge any past regulation that no longer exists, or even hypothetical future regulations that *could* be promulgated (but have not been), on the theory that they need certainty regarding how the world might look more than a year from now. Article III was not designed to satisfy such desires. Rather,

it allows only for review of concrete claims based on current injury or injury that is both imminent and certainly impending.

The Court should also dismiss Plaintiff's remaining claims. Plaintiff cannot show any non-speculative injury arising out of 45 C.F.R. § 75.300(d), because that regulation applies only to Title X grantees, and Plaintiff has not adequately pleaded that it would be eligible to apply for a Title X grant. Plaintiff's claim is also moot in light of HHS' announcement that it will not enforce § 75.300(d) pending re-promulgation, and its publication of a Notice of Proposed Rulemaking to amend the regulation. Plaintiff's challenge to the Church Amendment's non-discrimination provision, 42 U.S.C. § 300a-7(c), also fails because Plaintiff lacks standing. Plaintiff has not alleged that it has any employees, has started operations, or that any prospective employees have attempted to secure employment with Plaintiff despite performing or assisting in services covered by the statute. Plaintiff's alleged injury, therefore, is purely speculative.

## ARGUMENT

### I. Plaintiff Lacks Standing to Assert Claim 1, and Its Claim Is Moot.

#### A. Plaintiff Has No Standing to Assert Claim 1.

The first claim of the amended complaint seeks a declaration that several federal laws "prohibit the government from excluding Vita Nuova from the Title X program on account of its unwillingness to provide abortion referrals or abortion counseling." Amended Compl. ¶ 38, ECF No. 16. Plaintiff lacks standing to seek such a declaration because Defendants are not excluding, and will not exclude, Plaintiff from the program because of its unwillingness to provide such services. As Defendants' opening brief explained, the 2019 Rule permits Plaintiff to participate in the Title X program without providing abortion counseling or abortion referrals; indeed, the 2019 Rule *prohibits* Title X providers from counseling that promotes or encourages abortion, as

well as from engaging in abortion referrals as a method of family planning. Defs.' Mot. to Dismiss, ECF No. 17 ("MTD") at 4, 8.

Furthermore, it is well settled in this Circuit and elsewhere that if a plaintiff seeks declaratory or injunctive relief declaring a law invalid, and the law is superseded by another law during the pendency of the litigation, the case becomes moot. *See id.* at 8-9 (citing authority). And here, the 2000 regulations that Plaintiff seeks to declare unlawful were superseded by the promulgation of the 2019 Rule (to which Plaintiff does not object) *before* Plaintiff filed suit.[1] Thus, Plaintiff has not alleged a concrete and imminent Article III injury traceable to the now-defunct provisions of the 2000 regulations that Plaintiff challenges in its complaint.

It is true, as Plaintiff notes, that "standing is determined by the world that existed on July 3, 2019—the date on which Vita Nuova filed its original complaint." Pl.'s Opp. to MTD, ECF No. 18 ("Opp.") at 4 (citation omitted). But, as of that date, the 2019 Rule had already superseded the provisions of the 2000 regulations that Plaintiff challenges. That fact is not altered by Plaintiff's contention that HHS was allegedly "enforcing the 2000 rule and not the 2019 rule" on July 3, 2019, Opp. at 5, because Plaintiff cannot plausibly claim that HHS was imminently likely at that time to enforce the challenged provisions of the 2000 rule with respect to Plaintiff. As explained below, HHS had a pre-existing policy dating back to at least 2008 of not enforcing the abortion-related requirements of the 2000 rule when doing so would conflict with federal conscience statutes. Thus, as of July 3, 2019 (and as far back as 2008), Plaintiff would not have

[1] Most cases involving challenges to repealed statutes and regulations ground their analysis in the doctrine of mootness rather than Article III standing, presumably because the usual pattern in such cases is that the challenged statute or regulation is repealed while the case is pending. Here, the regulation relevant to Claim 1 (the 2000 regulation) was superseded by the 2019 Rule *before* Plaintiff filed suit. Plaintiff therefore lacked standing to bring suit in the first place.

been required to provide abortion counseling or abortion referrals as a condition of its participation in the Title X program.

As explained below, Plaintiff may not initiate suit here in order to attack collaterally a (hypothetical) adverse decision in another court. But as Defendants have explained previously, there is no need for the Court to decide whether Plaintiff's suit is an improper collateral attack because a second, independent reason exists for rejecting Plaintiff's standing argument. MTD at 11-12. As explained in the 2019 Rule, 84 Fed. Reg. 7,714, 7,716 (Mar. 4, 2019), HHS acknowledged as early as 2008 that the "regulatory requirement that grantees must provide counseling and referrals for abortion upon request . . . is inconsistent with the health care provider conscience protection statutory provisions." 73 Fed. Reg. 78,072, 78,087 (Dec. 19, 2008). Indeed, HHS made clear in the preamble to another rule that the 2019 Rule "did not alter HHS's pre-existing policy dating back to at least 2008 of not enforcing requirements of the 2000 regulations where they may conflict with the Federal conscience statutes." 84 Fed. Reg. 23,170, 23,191 n.64 (May 21, 2019). Thus, even *before* the 2019 Rule, through an exercise of its enforcement discretion, HHS did not require religious objecting entities like Plaintiff to provide abortion counseling or abortion referrals. And thus, even if a court were to vacate the 2019 Rule or reinstate nationwide injunctions against its enforcement, there is no reason to anticipate that any such hypothetical decision would have the effect of requiring Plaintiff to provide abortion referrals or counseling if it is awarded a grant in the Title X program.

Plaintiff's initial objection to the existence of this non-enforcement policy is to assert that an agency cannot interpret regulations to create exemptions where the regulatory text imposes a categorical requirement. Opp. at 9. But the only authority cited by Plaintiff to support this objection is a case dealing with so-called *Auer* deference, in which courts defer to agencies'

reasonable readings of genuinely ambiguous regulations. *See id*. (citing *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)). Defendants are not asking the Court here to defer to HHS' interpretation of the now-defunct regulatory requirement that grantees provide counseling and referrals for abortion upon request, because Plaintiff is not challenging any such interpretation. Instead, Defendants are merely requesting that the Court rely on HHS' long history of declining to enforce the now-defunct requirement with respect to religiously objecting entities such as Plaintiff. Nothing in *Kisor* precludes the Court from doing so, and in any event, it is well established that, where federal agencies have been vested with discretion to enforce a legal requirement, they possess considerable discretion in determining the particular circumstances in which they may exercise that enforcement discretion. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."); *FDIC v. Bank of Coushatta*, 930 F.2d 1122, 1128 (5th Cir. 1991).

Plaintiff's reliance on *Arizona Grocery Company v. Atchison*, 284 U.S. 370 (1932), is similarly misplaced, because unlike in that case, HHS is not changing any rule during the course of an administrative adjudication. *See id*. at 390 (holding that where the Interstate Commerce Commission had previously declared a maximum reasonable rate for certain shipments by a particular carrier, the Commission could not later order the carrier to pay reparation by declaring that the rate previously fixed was in fact unreasonable). Rather, Defendants are simply relying on their consistent history of declining to enforce the now-defunct regulatory abortion counseling and referral requirements against religiously-objecting Title X grantees to demonstrate that Plaintiff faces no concrete and imminent risk of enforcement of those requirements (even if the 2000 rule were to somehow be revived and Plaintiff were to apply for a Title X grant).

Plaintiff also is mistaken that "there is no evidence" that this non-enforcement policy remained in place in 2009 and thereafter; in fact, a January 15, 2009 memorandum from the Assistant Secretary of Health to all HHS Regional Health Administrators plainly stated that

> the requirement that [Title X] grantees provide abortion counseling and referrals does conflict with the statutory protections afforded to entities and individuals under [the Public Health Service Act and the Weldon Amendment]. The Office of Population Affairs is aware of this conflict between the requirement in the Title X regulation and the statutory requirements and, as such, *does not enforce* this Title X regulatory requirement on objecting grantees or applicants.

Mem. from Assistant Secretary of Health Joxel Garcia to HHS Regional Health Administrators I-X (Jan. 15, 2009) (attached as Ex. 1); *see also Oregon v. Azar*, No. 6:19-cv-00317-MC (D. Or.), ECF No. 164-1 (Jun. 13, 2019) (referencing memorandum). This memorandum has never been rescinded. And indeed, Plaintiff does not cite to a single instance in which HHS attempted to enforce the now-defunct abortion counseling and referral requirements against an organization with religious objections between 2008 and the present.

Urging that it nonetheless possesses standing, Plaintiff contends that it needs declaratory relief notwithstanding the promulgation of a regulation that supersedes the challenged regulations because "[t]he ongoing lawsuits against the 2019 rule raise the prospect that a court will vacate the rule or resurrect the nationwide injunctions against its enforcement." Amended Compl. ¶ 33. As Defendants' opening brief explained, however, this is not an appropriate basis for Plaintiff to seek declaratory relief in this forum. MTD at 10-11. The proper remedy for an improper injunction is direct appeal, not collateral attack in a different court. *Id*. (citing authority). Consequently, to the extent Plaintiff might be concerned about the outcome of suits in other courts challenging the 2019 Rule, its appropriate course of action is to present its arguments as an amicus in support of Defendants' position in those ongoing cases. However, Plaintiff may not file suit in a different court in order to mount a collateral attack on a (hypothetical) adverse decision in another court.

Plaintiff's contention that the present suit does not constitute such a collateral attack does not withstand scrutiny. Opp. at 8-9. Plaintiff devotes an entire section of its complaint to examining "The Ongoing Litigation Against the Final Rule." Amended Compl. ¶¶ 24-30. Claim 1 alleges that "[t]he ongoing lawsuits against the 2019 rule raise the prospect that a court will vacate the rule or resurrect the nationwide injunctions against its enforcement," *id*. ¶ 34, and raises concerns about "[t]he uncertain future of the 2019 rule," *id*. ¶ 35. The ongoing suits squarely raise the issue of whether HHS may permissibly prohibit Title X providers from engaging in referrals for abortion as a method of family planning or counseling that promotes or encourages abortion, because the plaintiffs in those actions are challenging the government's authority to include such provisions in the 2019 Rule. And in the event that a court adjudicating one of these ongoing suits were to determine that such provisions exceeded the government's authority, then the declaratory relief sought by Plaintiff here would "undermine, contradict, [and] interfere with" that other court's determination.[2] Opp. at 8.

Moreover, Plaintiff's speculation that "the 2019 rule is certain to be revoked if a Democratic Administration takes office in January 2021," *id*. at 3, also provides no basis for

[2] Contrary to Plaintiff's assertion, *DeOtte v. Azar*, 393 F. Supp. 3d 490 (N.D. Tex. 2019), is not on point. As an initial matter, the *DeOtte* plaintiffs provided health coverage to their employees at the time that suit was filed, and thus, they were subject to the contraceptive mandate they sought to challenge. In contrast, Plaintiff here does not currently participate in the Title X program and has never applied for a Title X grant; indeed, it was incorporated only one day before this lawsuit was filed. In addition, the regulations providing religious exemptions from the contraceptive mandate were enjoined at the time *DeOtte* was filed, and thus, the regulations plaintiffs sought to challenge there (*i.e.*, the regulations without exemptions) were in effect and applied to plaintiffs. Here, on the other hand, the regulations Plaintiff challenges have been superseded, the injunctions against the new regulations are currently stayed, and thus the challenged regulations are no longer in effect. Finally, as explained above, HHS has a longstanding policy of non-enforcement of the requirements at issue here against entities like Plaintiff, and no similar policy existed in *DeOtte*. Thus, unlike the *DeOtte* plaintiffs, Plaintiff in this case faces no concrete and imminent risk of injury caused by Defendants.

jurisdiction. As Defendants have explained previously, MTD at 12-13, because this allegation "relies on a highly attenuated chain of possibilities, [it] does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (citations omitted); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (rejecting allegations of future injury that "took [the] Court into the area of speculation and conjecture and [thus] beyond the bounds of our jurisdiction") (citation and internal punctuation omitted). Plaintiff's assertion of future injury depends on at least three layers of speculation, the first two of which involve future political events and the rulemaking decisions of a hypothetical future administration. And the third layer of speculation is that such a hypothetical administration would also abandon HHS' policy dating back to at least 2008 of not enforcing any abortion counseling and referral requirements against religiously-objecting organizations. MTD at 13. Every federal regulation could potentially be revised or rescinded by any (future) presidential administration, and merely invoking that possibility is a far cry from demonstrating that an injury that is "imminent" and "certainly impending." *Clapper*, 568 U.S. at 409 (citations omitted). Indeed, Plaintiff's expansive theory of Article III jurisdiction would allow all sorts of parties to challenge all sorts of theoretical laws that do not actually exist on the theory that someday the law might exist and might affect them.

Furthermore, Plaintiff cannot manufacture standing by submitting declarations from past donors stating that they have decided not to contribute money to Plaintiff unless Plaintiff receives the very judicial relief that it seeks in this lawsuit. Opp. at 11. Any such alleged injury is not "fairly traceable to the challenged action of" Defendants, but is instead "the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). For example, in considering a challenge to a federal statute that raised campaign

contribution limits in *McConnell v. Federal Election Commission*, 540 U.S. 93, 226 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), several political candidates declined to solicit or accept large donations authorized by the challenged statute, even as their competitors accepted such donations. *Id*. at 228. The Court rejected the candidates' assertion that they suffered injury from the challenged statute because it "put[] them at a fundraising disadvantage." *Id*. The Court explained that because these plaintiffs' "alleged inability to compete stems not from the operation of [the challenged statute]," but from the plaintiffs' personal choice not to solicit or accept large contributions, the plaintiffs "cannot show that their alleged injury is 'fairly traceable' to" the statute. *Id*. (citing *Lujan*, 504 U.S. at 562). Similarly, here, Plaintiff lacks standing because the alleged injury (a former donor's decision not to donate to Plaintiff) is not caused by the actions of Defendants but is instead attributable to that former donor's "own personal 'wish'" not to donate to Plaintiff. *Id*. Nothing prevents these individuals from donating to Plaintiff except for their own independent discretion. Any alleged harm incurred by Plaintiff is thus derived from actions independently taken by third parties not before the Court. *Cf. June Medical Servs. L.L.C. v. Gee*, 905 F.3d 787, 791-801 (5th Cir. 2018) (statute did not impose substantial obstacle on access to abortion services because, *inter alia*, no evidence suggested that any clinics where abortions were performed were likely to close because of the statute rather than because of independent personal choices made by providers).

An organizational plaintiff cannot demonstrate Article III standing simply by asking past donors to submit declarations stating that they have decided not to donate funds to the organization unless it receives a specific judicial ruling. *See, e.g., Young Advocates for Fair Education v. Cuomo*, 359 F. Supp. 3d 215, 236 (E.D.N.Y. 2019) (plaintiff organizations' assertion that amendment to state education laws "ha[d] impaired its fundraising ability" did not satisfy

traceability or redressability where organizations failed to show they had been "directly targeted by a state action or policy"). And with good reason: if that were the law, then virtually any organization could establish standing to challenge any law or policy by enlisting a past donor to submit a declaration stating that it would no longer donate any funds (or would donate less funds) to the organization as long as the challenged law or policy remained in effect. Article III's requirements are not so easily circumvented.

*Susan B. Anthony List v. Dreihaus*, 573 U.S. 149 (2014), and *Massachusetts v. EPA*, 549 U.S. 497 (2007), cited by Plaintiff, do not indicate otherwise. The Court in *Susan B. Anthony List* stated: "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or if there is a 'substantial risk that the harm will occur.'" 573 U.S. at 158 (quoting *Clapper*, 568 U.S. at 414 n.5). But *Clapper*, in turn, stated that "to the extent that the 'substantial risk' standard is relevant and is distinct from the 'clearly impending' requirement, respondents fall short of even that standard, in light of the attenuated chain of inferences necessary to find harm here." *Clapper*, 458 U.S. at 414 n.5. As explained above, Plaintiff's allegation of future injury (enforcement of the now-defunct abortion referral and counseling requirements) is based on just such an attenuated chain of inferences, comprising no less than three levels of speculation. Moreover, *Massachusetts* is inapposite, because in that case, "there was *certainty* that the circumstances that would cause the alleged future injury, namely, the implementation of the statute, regulation, or agency action, would occur." *Pennie v. Obama*, 255 F. Supp. 3d 648, 661 (N.D. Tex. 2017) (emphasis added). By contrast, Plaintiff's allegations here rest on "mere conjecture" about "possible" future events (*i.e.*, the 2019 Rule being enjoined or a hypothetical future administration re-promulgating the 2000 regulations, and HHS reversing its longstanding non-enforcement of any abortion counseling

and referral requirements against religious objectors), which "is legally insufficient to confer standing." *Id*. (quoting *Clapper*, 568 U.S. at 419).

Because Plaintiff has failed to demonstrate that it possesses an imminent, certainly impending injury in conjunction with Claim 1 that is traceable to the actions of Defendants and likely to be redressed by a favorable decision from this Court, it lacks standing to sue. The Court should thus dismiss Claim 1.

**B. In the Alternative, Claim 1 Has Been Rendered Moot.**

As Defendants' opening brief explained, "[m]ootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." MTD at 8-9 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal citation omitted)). Therefore, if the Court were to conclude that the mootness framework governs here instead of standing, the result would be unchanged: the Court still lacks subject matter jurisdiction, and Claim 1 must therefore be dismissed. MTD at 9 n.8. That result follows because after this action was filed, the Ninth Circuit clarified that its earlier en banc order had not vacated the three-judge panel's June 20, 2019 stay of all three district court decisions preliminarily enjoining the 2019 Rule nationwide. *See id*. at 5. Thus, it is clear at the present time that the 2019 Rule remains in effect, and has superseded the provisions of the 2000 regulations that Plaintiff challenges.

Plaintiff's opposition brief "acknowledge[s] that Vita Nuova can no longer pursue its now-abandoned APA claims against the 2000 rule in light of the Ninth Circuit's announcement." Opp. at 11. That brief "also acknowledge[s] that the [HHS] Secretary's decision to cease enforcement of the 2000 rule on July 15, 2019, moots Vita Nuova's previously asserted claims for injunctive relief." *Id*. at 11-12. But contrary to Plaintiff's assertion, its claims for declaratory relief are also

moot. *Id*. at 12-13. As explained previously, *see supra* I.A, Plaintiff has neither demonstrated that it is currently suffering any Article III injury nor that any future injury is imminent and certainly impending.

The mootness of Plaintiff's claim is unaffected by Plaintiff's allegations regarding the potential actions of a hypothetical future administration. *Id*. at 12. As explained above, Plaintiff's assertion of future injury depends on three separate layers of speculation. *See supra* I.A. Furthermore, Plaintiff's claims are moot despite the fact that the legality of the 2019 Rule continues to be challenged in pending litigation in other courts. MTD at 13. Plaintiff's contrary contentions rest on at least two layers of speculation, the first of which concerns the outcome of pending litigation and the second of which is that the present administration or a hypothetical future administration would abandon HHS' longstanding policy of declining to enforce any abortion counseling and referral requirements against religiously-objecting organizations. *See, e.g.*, 10B Charles Alan Wright *et al*., *Federal Practice and Procedure* § 2757 (4th ed.) (noting that "courts have declined to hear cases seeking a declaratory judgment on the constitutionality of a particular statute or ordinance when plaintiff has not shown that there is *any immediate threat that the statute will be enforced against him*") (emphasis added).

## II. Plaintiff Lacks Standing to Pursue Claim 2, Which Is Also Now Moot.

Plaintiff's challenge to 45 C.F.R. § 75.300(d) fares no better because Plaintiff also is not injured by that regulation. The regulation applies only to "recipients" of Title X funding, and Plaintiff has not established that, as of the time of the filing of the Complaint, Plaintiff would be a qualified applicant or subrecipient for Title X funds—even in the absence of 45 C.F.R. § 75.300(d). *See* MTD at 13-15. In fact, it appears from the declaration Plaintiff submitted from Carol Everett, Plaintiff's founder and CEO, that Plaintiff does not currently offer any services or

have any physical locations. *See* ECF No. 18-1 (describing how Plaintiff "will serve" certain locations and that Plaintiff "will be a medical home"). It is therefore purely speculative that Plaintiff will ever qualify for Title X funds, and receive them, such that 45 C.F.R. § 75.300(d) could ever apply to Plaintiff.

In any event, even assuming Plaintiff had standing to challenge 45 C.F.R. § 75.300(d), Claim 2 is now moot in light of HHS' Notice of Non-Enforcement regarding the challenged regulation. Plaintiff cites the voluntary cessation exception to mootness, but Plaintiff offers nothing besides pure conjecture to suggest the government will reverse its public policy of non-enforcement, which was published in the Federal Register. Opp. at 15-16. Plaintiff's conjecture is particularly unpersuasive in light of HHS' published Notice of Proposed Rulemaking to amend § 75.300(d). *See Ragsdale v. Turnock*, 841 F.2d 1358, 1365-66 (7th Cir. 1988).

## III. Plaintiff Has Not Alleged a Non-Speculative Injury as to Claim 3.

Plaintiff's RFRA challenge to 42 U.S.C. § 300a-7(c) must also be dismissed for lack of standing for the reasons Defendants have already explained. *See* MTD at 15-16. Plaintiff cannot show that, as of the date of the filing of the Complaint, it was injured, or had an imminent risk of injury, based on the challenged statute's decades-old prohibition on discrimination against individuals who perform or assist in the performance of abortions. As Defendants have pointed out, Plaintiff was incorporated one day before filing the Complaint in this case, and Plaintiff does not allege that it currently employs anyone, or that it has made any effort to hire prospective employees, much less that any prospective candidates have attempted to secure a position despite having performed or assisted in the performance of abortions. *See id.* The Everett declaration confirms that Plaintiff is not currently providing any services. *See* ECF No. 18-1, ¶¶ 2, 4. Because any alleged injury based on the requirements of 42 U.S.C. § 300a-7(c) is purely conjectural, Claim

3 of the amended complaint must be dismissed for lack of standing. *See Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016).

**CONCLUSION**

For the reasons stated above and in Defendants' opening brief, Defendants respectfully request that the Court dismiss Plaintiff's amended complaint.

Dated: January 17, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ERIN NEALY COX
United States Attorney

MICHELLE BENNETT
Assistant Branch Director

/s/ Daniel Riess
DANIEL RIESS (Texas Bar # 24037359)
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On January 17, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

    /s/ Daniel Riess
Daniel Riess